UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                     :

RITCHIE CAPITAL MANAGEMENT, L.L.C., et al.,   :
                                       :

                          Plaintiffs,   :

                    -v-                  :

U.S. BANK NATIONAL ASSOCIATION,        :

                          Defendant.   :

------------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 4/10/2015 |

14 Civ. 8513 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs Ritchie Capital Management, L.L.C. and five affiliated entities (together, "Ritchie"[1]) brought this suit against defendant U.S. Bank National Association ("U.S. Bank"), alleging that U.S. Bank helped Minnesota businessman Tom Petters perpetrate and conceal a massive Ponzi scheme over several years. As a result, Ritchie lost about $157 million. U.S. Bank now moves to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Minnesota. For the reasons set forth below, the Court grants U.S. Bank's transfer motion.

## I.    Background

### A.    Factual Background[2]

      On January 7, 2015, Ritchie filed a Complaint against U.S. Bank, bringing claims including conspiracy to commit fraud as well as aiding and abetting fraud. Dkt. 4 ("Compl.").

---

[1] The five other plaintiffs are Ritchie Capital Management, Ltd.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investment I, L.L.C.; and Ritchie Capital Structure Arbitrage Trading, Ltd. *See* Dkt. 4.

[2] The Court's account of the facts is drawn from the Complaint. Dkt. 4. The Court may "also take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (citing, *inter alia*, Fed. R. Evid. 201(b)).

At its heart, the Complaint alleges that U.S Bank knew about and took various steps to facilitate Tom Petters' fraud.  Ritchie's Complaint explains both Petters' fraud and the role that U.S. Bank allegedly played in it.

As to Petters' fraud, the Complaint alleges that Petters created, and was "the ring-leader" of, a "massive" "fraudulent purchase order financing scheme."  *Id.* ¶¶ 26, 50.  "Petters and his criminal associates" conducted this scheme for at least a decade "through Petters Company, Inc. ('PCI'), resulting in unpaid debts to PCI's creditors of over $3 billion and damages to Plaintiffs of over $157 million."  *Id.* ¶ 1.  Petters' fraud was based on "intentional misrepresentations that PCI was in the business of acquiring brand-name consumer electronics merchandise at below wholesale prices and [re]selling those goods at substantial profits to discount warehouse club retailers like Costco . . . and Sam's Club."  *Id.* ¶ 2.  Petters and his companies financed their purchases by obtaining loans "in exchange for what they represented were secured, high-yield promissory notes."  *Id.* ¶ 19.  In fact, however, no such electronics purchases were made; rather, it was a huge Ponzi scheme.  Petters' financing deals were supported by purported equipment purchase orders and other documentation, but the purchase orders and the equipment were fabrications.  "In October 2008, after Petters was arrested and PCI filed a petition for bankruptcy relief, it was revealed that Petters, PCI and their affiliates had used invalid purchase orders . . . to fraudulently induce a number of lenders to loan over $30 billion to Petters' companies between January 2003 and September 24, 2008."  *Id.* ¶ 3.

In fall 2008, federal agents searched Petters' home in Wayzata, Minnesota, and his businesses' headquarters in Minnetonka, Minnesota.  Petters was then prosecuted criminally in the District of Minnesota.  After a 20-day trial, he was convicted of 20 counts and is now serving

a 50-year prison sentence.  *See United States v. Thomas J. Petters*, No. 08 Cr. 364 (RHK) (AJB) (D. Minn.), *aff'd*, *United States v. Petters*, 663 F.3d 375 (8th Cir. 2011).

Between February and May 2008—a few months before Petters' fraud was revealed—Ritchie and its affiliates made a series of loans to Petters and his companies, totaling $189 million.  Compl. ¶¶ 3, 48.  "Petters did not disclose the material facts regarding his fraudulent purchase-order financing scheme to Plaintiffs.  Instead, Petters intentionally misrepresented the nature and financial condition of his business with the intent to induce Plaintiffs to extend loans to him and his companies in reliance on those false representations and material omissions that led Plaintiffs to believe that Petters was entirely a legitimate businessman . . . ."  *Id.* ¶ 3.

As to U.S. Bank's role in Petters' fraud, Ritchie's Complaint alleges that U.S. Bank knowingly facilitated Petters' "money laundering and fraudulent transfers."  *Id.* ¶ 5.  "Petters-controlled companies and entities maintained a number of bank accounts at U.S. Bank (collectively, the 'Petters Accounts'), which Petters and his cohorts utilized to perpetrate and operate their fraudulent purchase order financing scheme."  *Id.* ¶ 4.  Specifically, Petters and PCI maintained a trust account, a funding account, and a capital account "into which Costco, Sam's Club, and other wholesale club retailers were supposed to deposit the purchase money which would become subject to a security interest in favor of the lenders."  *Id.*  U.S. Bank "managed and oversaw the flow of all funds to and from the Petters Accounts at U.S. Bank."  *Id.* ¶ 5.  Moreover, U.S. Bank entered into "collateral agreements, escrow agreements and/or deposit account control agreements pursuant to which U.S. Bank served as custodian and/or agent for the parties that held interests in the funds credited to accounts at U.S. Bank that were subject to those agreements (collectively, the 'Collateral Accounts')."  *Id.*  By 2006, "U.S. Bank had actual knowledge that PCI"—rather than big-box retailers like Costco—"was the true source of the

incoming payments and wire transfers of funds into the Petters Accounts" and the Collateral Accounts. *Id.* ¶¶ 8, 42, 87. Despite its knowledge, U.S. Bank, as alleged, "deliberately re-coded its bank statements for the Collateral Accounts to conceal" the fact that PCI, rather than retailers, was making the payments. *Id.* ¶ 43. "[A]t the direction of Petters and his cohorts," U.S. Bank "indicated that the source of the incoming payments was a third-party wholesale retailer," thus giving apparent support for, and legitimacy to, Petters' fraudulent "business" model. *Id.* ¶¶ 43, 51. This appearance of legitimacy "enabled Petters to fraudulently induce Ritchie to make the loans to Petters." *Id.* ¶ 51. If Ritchie had known the truth, it would not have loaned any money to Petters and his companies. *Id.* ¶ 52.

Ritchie's Complaint alleges that, to further the fraud, U.S. Bank took the following specific actions: (1) the Bank "processed each payment sent by PCI and received into the Petters Accounts and Collateral Accounts, including receiving incoming wires indicating that funds were coming directly from PCI"; (2) the Bank "recorded and described each incoming payment from PCI in bank statements and records prepared for the Collateral Accounts"; (3) the Bank "deliberately re-coded its bank statements for the Collateral Accounts to" change the identity of the payer (from PCI to retailers); (4) the Bank "continued to process all of the payments sent by PCI"; and (5) the Bank "entered into a corrupt agreement with Petters and PCI to, among other things, permit PCI to establish and structure the direct payment system and Collateral Accounts at U.S. Bank to provide comfort to lenders and investors like Ritchie that Petters and PCI were operating a legitimate business." *Id.* ¶¶ 87, 89, 92, 107. Ritchie's Complaint further alleges that U.S. Bank's relationship with Petters "was very lucrative for U.S. Bank and it desired to continue receiving substantial fees from Petters-related accounts and the tremendous number of transfers into and out of the Petters Accounts and Collateral Accounts at U.S. Bank." *Id.* ¶ 119.

**B.      Procedural Background**

On September 23, 2014, Ritchie commenced this action against U.S. Bank by filing a

Summons with Notice in Supreme Court of the State of New York, New York County.  Dkt. 1,

Ex. A.  On October 24, 2014, U.S. Bank timely removed the action to this Court.[3]  Dkt. 1.  On

January 7, 2015, Ritchie filed its Complaint.  Dkt. 4.

On February 5, 2015, U.S. Bank moved to transfer the case to the District of Minnesota,

Dkt. 5, and filed a memorandum of law, Dkt. 6 ("U.S. Bank Br."), and two declarations in

support of its transfer motion, Dkt. 7 ("Wilson Decl."), Dkt. 8 ("Kleinbaum Decl.").  On March

6, 2015, Ritchie filed a brief in opposition to the transfer motion, Dkt. 12 ("Ritchie Br."), as well

as a declaration in support of its opposition, Dkt. 13 ("Leyva Decl.").  On March 13, 2015, U.S.

Bank filed a reply brief.  Dkt. 14 ("U.S. Reply Br.").  Thereafter, U.S. Bank also filed a motion

to dismiss Ritchie's Complaint, as well as a memorandum of law and declaration in support of its

motion.  Dkt. 15–17.  The Court stayed the briefing as to the motion to dismiss so that it could

address U.S. Bank's motion to transfer.  Dkt. 18.

**II.      Legal Standards**

Section 1404(a) provides:  "For the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division where it

might have been brought."  "The purpose of this provision is to prevent waste of time, energy

and money and to protect litigants, witnesses and the public against unnecessary inconvenience

and expense."  *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 14 Civ. 1936 (ER),

2015 WL 1433320, at *7 (S.D.N.Y. Mar. 30, 2015) (quoting *Tillery v. N.Y. State Office of*

---

[3] U.S. Bank was not served with Ritchie's Summons with Notice until September 25, 2014.  *See* Dkt. 1, Ex. B.  U.S. Bank's removal was therefore clearly timely.  *See generally Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999).

*Alcoholism & Substance Abuse Servs.*, No. 13 Civ. 0035 (CM), 2013 WL 6405326, at *3 (S.D.N.Y. Dec. 5, 2013)) (internal quotation marks omitted).  Section 1404(a) gives district courts wide latitude to decide whether to transfer venue.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

In deciding motions to transfer venue under § 1404(a), courts inquire, first, "whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion."  *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS) (HBP), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011).  The answer to the first inquiry is yes:  This action could have been brought in the District of Minnesota.  Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Ritchie alleges (and U.S. Bank agrees) that the sole defendant, U.S. Bank, resides in the District of Minnesota.  *See* Compl. ¶ 17 ("U.S. Bank is a national banking association with it[s] principal place of business at 800 Nicollet Mall, Minneapolis, Minnesota 55402."); *accord* U.S. Bank Br. 12 ("U.S. Bank's headquarters is in Minnesota.").  Accordingly, venue would be proper in the District of Minnesota.

Assessing whether transfer is a valid exercise of discretion requires the Court to balance various factors: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.  *Keitt v. New York*, No. 12 Civ. 2350 (PAE), 2013 WL 3479526, at *2–3 (S.D.N.Y. July

10, 2013); *see also Robertson*, 2011 WL 5175597, at *4; *Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 330 (S.D.N.Y. 2007); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56–57 (S.D.N.Y. 2001).

### III.     Discussion

Applying these familiar factors, the Court concludes that they overwhelmingly support transferring this case to the District of Minnesota.  This case has extremely strong connections to Minnesota (*e.g.*, facts, actions, witnesses, documents) and virtually no connection to New York.  At its core, this case involves claims that a Minnesota-based bank took various actions in Minnesota to help a Minnesota-based businessman, and Minnesota-based businesses, perpetrate and conceal a massive fraud.  And the District of Minnesota has great familiarity with the core facts, having handled scores of criminal, civil, and bankruptcy cases pertaining to the Petters fraud and fallout.

As to particular factors bearing on appropriateness of transfer:

1.  *Convenience of witnesses*:  Minnesota is far more convenient for witnesses.  U.S. Bank's headquarters is in Minnesota, and its witnesses are highly likely to reside and work there.  Furthermore, as noted by a court in this District that *sua sponte* transferred a Petters-related case to Minnesota, "non-party witnesses related to Petters' companies, which were based in Minnesota, are likely to find Minnesota more convenient."  *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, No. 14 Civ. 2557 (LGS), 2014 WL 5810629, at *9 (S.D.N.Y. Nov. 10, 2014); *see generally Eres N.V. v. Citgo Asphalt Ref. Co.*, 605 F. Supp. 2d 473, 480 (S.D.N.Y. 2009) ("The convenience of witnesses is typically the most important factor when considering a motion to transfer."); *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) (same).  This is precisely what one would expect given that the Complaint alleges that a

Minnesota-based bank deliberately helped Minnesota-based businesses perpetrate a fraud.  *See*

*generally Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991)

("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of

which is the convenience of witnesses.  Courts routinely transfer cases when the principal events

occurred, and the principal witnesses are located, in another district.") (citations omitted); *see*

*also id.* (transferring in large part because "the events at issue and almost all of the pertinent

witnesses are in California").

Indeed, tellingly, Ritchie fails to identify a single witness for whom New York is more

convenient.  Ritchie argues that its CEO (Thane Ritchie) met with Petters in New York City to

negotiate before Ritchie entities lent Petters money in 2008, and that Ritchie's then-outside

counsel, Kenneth Rosenblum, negotiated terms in New York City.  Thus, Ritchie argues, "Mr.

Ritchie and Mr. Rosenblum have connections to New York, and are not located in Minnesota."

Ritchie Br. 10.  That a few meetings may have occurred in New York, however, does not

indicate that New York is a convenient, let alone more convenient, forum for any witness.  That

two witnesses have nebulous "connections to New York" is far from sufficient to outweigh the

obvious convenience to witnesses of proceeding in Minnesota.

2.  *Convenience of parties*:  No party resides in New York or has any apparent connection

to New York.  In contrast, defendant U.S. Bank is headquartered in Minnesota.  As to plaintiffs,

Ritchie has already litigated a host of Petters-related cases in Minnesota, *see infra*, p. 11.

Plaintiffs otherwise appear to have no connection to either Minnesota or New York:  Ritchie

Capital Management, L.L.C. and another plaintiff L.L.C. are Delaware entities that appear to be

based in Illinois, and several of the Ritchie-affiliated companies are "Cayman Islands exempted

compan[ies]."  Compl. ¶¶ 11–15.[4]  Ritchie makes the generalized claim that "Minnesota is entirely *inconvenient* for Ritchie," Ritchie Br. 1, but this claim lacks concrete support or explanation.

A transfer, on balance, would therefore be much more convenient for the defendant, while not enhancing (or hindering) plaintiffs' convenience.  Under such circumstances, this factor "clearly" supports a transfer.  *Manao Invs., Inc. v. Stouts Brunswick Assocs. Ltd. P'ship*, No. 96 Civ. 7100 (HB), 1997 WL 53200, at *1 (S.D.N.Y. Feb. 10, 1997) (finding that the convenience of the parties "[c]learly . . . supports transfer to New Jersey" where defendants were New Jersey residents, plaintiff was a Delaware corporation, and plaintiff's principal was a Venezuelan resident who might have offices in Florida); *cf. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) ("Where a transfer would merely switch the burden of inconvenience from one party to the other, this factor . . . is essentially neutral.") (citation and internal quotation marks omitted).

3.  *Locus of operative facts*:  The locus of operative facts and the location of relevant documents compellingly support a transfer to Minnesota.  All conduct, activity, and purported wrongdoing that is specifically alleged against U.S. Bank occurred in Minnesota and was allegedly done by U.S. Bank employees in Minnesota.  U.S. Bank allegedly (1) established and maintained Petters Accounts in Minnesota; (2) "processed each payment sent by PCI" in Minnesota, including "receiving incoming wires indicating that funds were coming directly from PCI"; (3) "recorded and described each incoming payment from PCI in bank statements and

---

[4] None of the plaintiffs appears to be registered to do business in New York.  *See* Wilson Decl., Ex. 10.

records" in Minnesota; (4) "deliberately re-coded its bank statements" in Minnesota to conceal the fact that PCI, rather than retailers, was making the payments; (5) entered into collateral agreements and escrow agreements in Minnesota; (6) "entered into a corrupt agreement with Petters and PCI," seemingly in Minnesota; and (7) "receiv[ed] substantial fees from Petters-related accounts and the tremendous number of transfers into and out of the Petters Accounts and Collateral Accounts at U.S. Bank" in Minnesota.  Compl. ¶¶ 43, 87, 89, 92, 107, 119.  The specific accounts, transfers, records, agreements, and alleged actions at issue *all* occurred in Minnesota.  *See generally, e.g.*, Complaint; Kleinbaum Decl.  And, as described earlier, the massive fraud that U.S. Bank allegedly knew about and facilitated involved Petters' Minnesota-based companies and led to the prosecution, in Minnesota, of several Minnesotans.  *See, e.g.*, *Petters*, 663 F.3d at 378.  Although a few negotiating sessions may have occurred in New York, Minnesota is plainly the nerve center of this case—and the site of *every* action by U.S. Bank taken in alleged furtherance of the fraudulent scheme.  *See, e.g.*, *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 408 (S.D.N.Y. 2005) ("The fact that the locus of operative facts likely lies in Pennsylvania weighs strongly in favor of transfer."); *Manao*, 1997 WL 53200, at *2 ("'Where there is no material connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action.'") (quoting *Brown v. Dow Corning Corp.*, No. 93 Civ. 5510 (AGS), 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996)).

4. *Other factors supporting transfer*:  In addition to Minnesota being more convenient for witnesses and the defense, as well as the factual locus of the critical events on which trial would turn, a transfer to Minnesota would also further judicial economy relative to New York. No documents, parties, or witnesses are alleged to be in New York.  And unlike the Minnesota courts, the New York courts have no institutional familiarity with this controversy.  In part for

this reason, New York courts have not hesitated to transfer Ritchie's Petters-related cases to Minnesota. *See, e.g.*, *BMO Harris Bank*, 2015 WL 1433320, at *6–8; *JPMorgan Chase & Co.*, 2014 WL 5810629, at *9.

By contrast, Minnesota federal courts are intimately familiar with the underlying facts and proceedings stemming from the Petters fraud and fallout, due to the more than 100 Petters-related cases in Minnesota, many of which have involved Ritchie.  *See JPMorgan Chase & Co.*, 2014 WL 5810629, at *9 (transferring case to Minnesota in part because the "District Court of Minnesota has so far ruled in at least two cases involving [Ritchie] and arising out of the same core of facts alleged here" so that the "interests of justice will be best served by transferring this case to a court that already has familiarity with the underlying disputes"); *see also, e.g.*, *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 858–59 (8th Cir. 2015) (affirming summary judgment against Ritchie in Petters-related case and citing two other Eighth Circuit opinions concerning Ritchie and Petters); *Ritchie Capital Mgmt., LLC v. Jeffries*, No. 09 Civ. 07288 (JWD), 2010 WL 768877 (N.D. Ill. Mar. 4, 2010) (transferring litigation to Minnesota because of litigation in the District of Minnesota involving some of the same sets of facts and circumstances as in the *Jeffries* litigation); *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 849 F. Supp. 2d 881 (D. Minn. 2012) (dismissing action against former officers of Petters' companies as duplicative of bankruptcy proceedings); *Ritchie Capital Mgmt., L.L.C. v. Coleman*, No. 12 Civ. 270 (ADM), 2012 WL 1901300, at *1 (D. Minn. May 25, 2012) (dismissing case against Petters' former colleagues and law firm as duplicative of bankruptcy proceedings); *cf., e.g.*, *In re Petters Co.*, No. 08-45257 (Bankr. D. Minn. filed Oct. 11, 2008); *In re Petters Group Worldwide, LLC*, No. 08-45258 (Bankr. D. Minn. filed Oct. 11, 2008); *In re Polaroid Corp.*, No. 08-46617 (Bankr.

D. Minn. filed Dec. 18, 2008); *In re Petters Capital, LLC*, No. 09-43847 (Bankr. D. Minn. filed June 12, 2009).

Additionally, as another court in this District aptly summarized, cases arising out of the same facts as alleged here "also remain pending in the bankruptcy court in that district.  Further, there exists a real danger that conflicting findings may emerge across the various courts where Ritchie is litigating the fallout of Petters' alleged frauds.  The interests of justice will be best served by transferring this case to a court that already has familiarity with the underlying disputes.  Consequently, the case is transferred to the District of Minnesota." *JPMorgan Chase & Co.*, 2014 WL 5810629, at *9 (citing *Jeffries*, 2010 WL 768877, at *4).

5. *Plaintiffs' choice of forum*:  Here, "the only factor that weighs against transferring the case . . . is the plaintiff's choice of forum."  *Keitt*, 2013 WL 3479526, at *3.  Although a plaintiff's choice of forum is "presumptively entitled to substantial deference," *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004), "that choice is 'entitled to less deference where the connection between the case and the chosen forum is minimal,'" *Keitt*, 2013 WL 3479526, at *3 (quoting *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 401 (S.D.N.Y. 2010)); *accord Kreinberg*, 496 F. Supp. 2d at 330 ("[W]hen the operative facts have few meaningful connections to the plaintiff's chosen forum . . . the importance of the plaintiff's choice of forum measurably diminishes."); *Stein v. Microelectronic Packaging, Inc.*, No. 98 Civ. 8952 (MBM), 1999 WL 540443, at *8 (S.D.N.Y. July 26, 1999) ("Here, the operative facts have little or no connection with New York.  Accordingly, plaintiffs' choice of forum is entitled to less deference than it would usually receive, and transfer is warranted.").  Such is the case here.[5]

---

[5] Remaining factors, including the relative means of the parties, do not significantly affect the analysis in either direction.

Viewing these factors in totality, they compellingly support transfer to the District of Minnesota.

## CONCLUSION

For the foregoing reasons, the Court grants U.S. Bank's motion to transfer this case to the District of Minnesota.  In the interest of deferring to the scheduling practices of the transferee court, this Court also hereby stays the briefing of the defendant's motion to dismiss until this case is reassigned to a judge in the District of Minnesota.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 5.  The Clerk is also directed to transfer this case to the District of Minnesota and, upon completion of the transfer, to close this case.

SO ORDERED.

_Paul A. Engelmayer_
PAUL A. ENGELMAYER
United States District Judge

Dated: April 10, 2015
       New York, New York